# Bailey's Appeal.*

1. The Act of Assembly of 24th February, 1834, § 20, providing for the sale of a decedent's real estate, when the personalty is insufficient to pay debts, contemplates merely the conversion into money, of so much of the decedent's real estate, as, when added to the personalty, will be sufficient to pay his debts.

2. Both the policy and the letter of that Act of Assembly, favor cash sales, and the Orphans' Court, as a general rule, ought to prescribe no other. But whenever the court, in ordering a sale of decedent's real estate, have satisfactory reason for believing that a sale, more advantageous for all parties, heirs as well as creditors, can be made on time than for cash, such a sale should be ordered. But no payment should be postponed, beyond a year from the confirmation of sale. And whatever purchase-money is not paid down, should be secured, either by judgment bond, or mortgage, as a lien on the premises.

3. The court, and not the administrator, should fix the terms of sale.

APPEAL from the decree of the Orphans' Court of *Fayette county.*

Eli J. Bailey, administrator *de bonis non*, of John Cock, deceased, held a judgment against the estate of William F. Coplan, deceased. To satisfy the same, the real estate of deceased was levied on, condemned, and, under *venditioni exponas*, issued October 12, 1857, advertised for sale by the sheriff. Coplan's administrator petitioned the Orphans' Court to grant him an order to sell the real estate thus levied on, for the payment of

* The Orphans' Court, by Act of 22d March, 1859, p. 207, § 1, is now authorized to decree sales of real estate upon time. This report was prepared before the passage of the above mentioned act, and was inadvertently put in type, and inasmuch as it contains some matters not changed by the act, the reporter allows it a place.

debts.    Whereupon, the court decreed the sale as prayed for, on the following :—

" *Terms.*—One-third of the purchase-money to be paid on confirmation of the sale.    One-third in one year, and one-third in two years thereafter ; with interest from the date of the confirmation.    Bond to be given in $3000, with security to be · approved by the court, or a judge in vacation."

An order of sale was then issued to Coplan's administrator. Cock's administrator applied to the Orphans' Court, to have that order of sale set aside, on the ground that the court had no power to order the sale of real estate on time, for the payment of debts.    The application was refused, but on motion by the counsel of Coplan's administrator, the court set aside the *venditioni exponas*, from which decree Bailey, administrator of Cock, appealed

The case was argued, November 10, 1858, before the Supreme Court.

*Kane*, for appellant.

*Howell*, for appellee.

The opinion of the court was delivered January 3, 1859, by

WOODWARD, J.—The question presented by the record is, whether an Orphans' Court, in ordering a sale of decedent's real estate for payment of debts, has power to prescribe terms for the payment of the purchase-money.    The terms prescribed in this case were one-third in hand, one-third in one year, and one-third in two years.

The appellant, who complains of this order, was a judgment-creditor of the decedent—had levied on his real estate,· and was about to bring it to a sheriff's sale, when his proceedings were· arrested, and the administrator directed to proceed in the Orphans' Court.    The lien of his judgment will be divested by. the Orphans' Court sale ; he will be delayed two years in the collection of his money, and meanwhile the bond of the administrator and his sureties, will be his only security.

There is nothing in the letter of the Act of Assembly, under which the administrator is proceeding, to indicate the legislative intention that any credit should be given for the purchase-money.    The sale is to be made under the " direction" of the Orphans' Court, but the act contemplates merely the conversion into money of so much of the decedent's real estate, as, when added to the personalty, will be sufficient to pay his debts.

In *Davis' Appeal*, 2 H. 372, it was said that the object of the legislature, was to bring the assets of the decedent under the management, and within the distribution of an officer subject to the supervision of the Orphans' Court, and that it is a mistaken

notion, to suppose that the object was to effect a sale on time, so that the estate might bring more money.

If such be a sound exposition of the Act of Assembly, there is nothing in either its letter or its policy, to justify the practice which prevails in some parts of the State, of giving long credits for the purchase-money of Orphans' Court sales.

Another act, that of 15th March, 1832, § 15, requires executors and administrators to file a just account and settlement of *all* the goods, chattels, and credits of the deceased, which come to their knowledge, within one year from the time of administration granted, or when thereunto legally required. Citations under this act are a matter of right, and after a year has elapsed from the time of administration granted, are always awarded as of course, upon the application of parties in interest, to compel executors and administrators to settle their accounts.

Now, considering real estate as assets for the payment of debts, not because it is entrusted in the first instance to the personal representatives of the decedent, but because it is made easily accessible to them, and they are bound to resort to it " *without delay*," as soon as it appears that the personal estate is insufficient, (see 20th sec. of Act of 24th February, 1834, Purdon, 200, title Decedent's Estates,) and considering, also, that they are bound to make final settlement of their accounts, within a year, or " when thereunto legally required," it is difficult to find any ground for the credit system that prevails, and especially for so long a postponement of payments as was made in this instance.

Not only was an inferior security substituted for the lien which the appellant held, and that without his consent or acquiescence, but the administrator was disabled from making that prompt and speedy settlement of his accounts, which the several Acts of Assembly contemplate. Of these things he has a right to complain. We find no warrant, either in the Acts of Assembly or the adjudications of this court, for such an order as was made in this case, and it must, therefore, be reversed. And, as the case is up by appeal, it is our duty to indicate the order which should have been made. This brings us to the consideration of a point of practice, on which we should be glad to see uniformity prevail throughout the State, instead of the discordant usages which exist at present.

We have no doubt, that both the policy and letter of the law, as already indicated, favor cash sales, and we think the Orphans' Court ought, as a general rule, to prescribe no other. But considering the paternal character of that court, and the large discretion with which the law invests it, for the benefit, not only of creditors but of orphans and widows, and looking to the extensive, though diversified, practice that prevails on the subject

in hand, we say that whenever the court in ordering a sale of a decedent's real estate, have satisfactory reasons for believing that a sale more advantageous for all parties, heirs, as well as creditors, can be made on time than for cash, such a sale should be ordered. But no payment should be postponed beyond a year from the confirmation of the sale. And whatever purchase-money is not paid down, should be secured, either by judgment bond or mortgage, as a lien on the premises.

We adopt the year as the limit of credit, not only because of its analogy to the time prescribed for executors and administrators to settle estates, but because in some portions of the State, such has always been the practice, and it has been found to work well.

In some counties, the court fixes the terms of sale, in others, the administrator. In *Davis' Appeal*, the administrator, though he had fixed his own conditions, made no return of them to the court, and he was held accountable as for a cash sale. Undoubtedly, the court should prescribe the conditions. The Act of Assembly vests them with the direction of the sale, and generally, if not uniformly, whenever the subject has been touched in this court, it has been said, that the court, and not the administrator, should fix the terms and conditions.

Thus, in *Myers* v. *Hodges*, 2 W. 383, Justice Sergeant said, " but the terms of sale, as well as the property necessary to be sold, and the necessity of selling it, are by law, to be determined by the court, not by the administrator."

In *Randolph's Appeal*, Mr. Justice Bell, said, " when ordering the sale, the Orphans' Court, virtually prescribe, as a condition, the payment of the purchase-money in cash, or at least, before the delivery of the deed, for such is always to be taken as the terms of such a sale, when no other conditions are expressly imposed by the court."

And by Mr. Justice Coulter, in *Moore* v. *Shultz*, 1 H. 102, " it is not a sale by the administrator, for he has no authority whatever to sell *virtute officii*. It is a sale made by authority and direction of the Orphans' Court, which prescribes or ought to prescribe the time, manner and conditions of the sale."

And by Justice Black, in *Brial's Appeal*, 12 H., " there were no terms of sale prescribed at the time the order was made. This was an omission which the administrator had no right to supply by terms of his own making."

Expressions of judges to the same effect might be multiplied, but these are sufficient to indicate the state of the judicial mind on the point before us, and ought to suffice to produce uniformity of practice in the several counties.

And now, to wit: January 4, 1859, it is considered, ordered and decreed, that so much of the order and decree of the Or-

[Hood *v.* Hood.]

phans' Court, of the county of Fayette, made on the 19th day of September, 1857, for the sale of certain real estate, of William F. Coplan, deceased, as directed, the purchase-money to be paid, one-third in hand, one third in one year, and one-third in two years, is reversed and set aside, and the record is remitted to the said Orphans' Court, with directions to amend said order, by prescribing such conditions as shall make the purchase-money payable within one year from the confirmation of the sale; the costs of this appeal to be paid by the administrator out of the estate of the decedent.